UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 10-221(DSD)
Civil No. 12-152(DSD)

United States of America,

        Plaintiff,

v.                                        **ORDER**

Corey N. Johnston,

        Defendant.

This matter is before the court upon the pro se motion to vacate, set aside or correct sentence by defendant Corey N. Johnston. Based on a review of the file, record and proceedings herein, and for the following reasons, the court denies the motion and denies a certificate of appealability.

**BACKGROUND**

The United States charged Johnston with bank fraud, in violation of 18 U.S.C. § 1344 and filing a false tax return, in violation of 26 U.S.C. § 7206(1). See Am. Information, ECF No. 8. The offense involved arranging and then overselling participation in commercial loans to banks and other lenders. For example, Johnston sold over $30 million in participations in an $8-million loan to six different banks. See Johnston Aff. Ex. 12, ECF No. 47-3, at 16. Johnston did not tell the lenders that he was selling more than 100-percent participation in each loan. Plea Tr. at 20:17–21:3, 21:10–23:15. Before the federal criminal prosecution,

a state-court receiver was appointed to take control of Johnston's business and attempt to recover funds.

In the present case, Johnston retained defense counsel Thomas Kelly, Robert Sicoli[1] and Gretchen Gurstelle. On September 2, 2010, Johnston pleaded guilty to both charges pursuant to the terms of the plea agreement. Johnston agreed that "all victim banks who participated in oversold loans and the Internal Revenue Service are victims." Plea Agmt. ¶ 5. Johnston also agreed that he "received $79,950,000 in excess participations from the lenders," id. ¶ 1(9), and that "the total amount of restitution for which [he] is liable shall be determined by the Court," id. ¶ 5. Johnston and the government did not agree on the loss amount. Plea Tr. 16:23–17:13. The government believed that the loss amount was $79,950,000, and the parties agreed to address the amount at a later hearing. Id. Johnston said that he had talked to Kelly "at great length" and was satisfied with his representation. Id. at 26:21–27:21.

The presentence investigation report calculated the loss to be $79,995,000 for purposes of sentencing with restitution due in the amount of $117,189,775.80. On February 16, 2011,[2] Johnston filed his position regarding sentencing stating that he "objects to the

---

[1] Sicoli joined the defense team on March 7, 2011.

[2] Kelly moved for a three-month extension of the due date for Johnston's position regarding sentencing to allow an independent financial analysis by Johnston, his counsel and certified public accountant Gary Thorvig. The court granted the motion.

2

Presentence Investigation's proposed loss calculation" and that his attorneys continued to meet with the government "with the objective of clarifying the actual loss and mitigating the intended loss." ECF No. 22. The government requested an evidentiary hearing. ECF No. 26. Johnston then filed a sentencing memorandum in which he agreed that he "oversold participation in the ten loans by $79.95 million" but that the "actual loss as defined by the Guidelines is predicted to be less than that amount." ECF No. 27, at 9. The day before sentencing, the government withdrew its request for an evidentiary hearing after defendant "indicated he does not dispute the loss amount and therefore the advisory Guidelines are not in dispute." ECF No. 30.

At sentencing, Kelly and Sicoli appeared on behalf of Johnston. Kelly indicated that Johnston did not dispute the loss amount in the presentence investigation report, but believed that the report did not reflect funds already recovered from victims by the receiver. Sent. Tr. 4:18–5:5. Johnston did not object or otherwise contradict the statements of Kelly or the facts in the presentence investigation report when he addressed the court. Id. at 15:21–18:4.

The court adopted the facts contained in the presentence investigation report and determined that the offense level was 32, based on a 24-level enhancement for a loss between $50 and $100 million. With a criminal history category of I, Johnston's

advisory Guidelines range was 121 to 151 months imprisonment. After considering the arguments of Kelly, position pleadings, letters in support of Johnston, Johnston's statements, the arguments of the government and the factors mandated by 18 U.S.C. § 3553(a), the court sentenced Johnston to 72 months imprisonment. The court also imposed restitution, but delayed setting the amount to allow the receiver to identify and recover additional funds.

At the end of the hearing, the court asked if anything else should come before the court, and the government raised two unrelated issues. Id. at 30:8–32:19. After the court disposed those issues, the government and Kelly stated that there were no other issues; Johnston himself raised no issue and instead said "Thank you." Id. 32:20–24. Johnston did not appeal.

On September 28, 2011, the government moved for the court to make a final restitution determination. ECF No. 39. The court notified the parties that it intended to enter a final order of restitution and requested written response, if any, to the proposed restitution amount. ECF No. 40. Neither party responded, and on October 31, 2011, the court ordered restitution in the amount of $91,193,042. ECF No. 41.

On December 15, 2011, Johnston filed a pro se motion under Federal Rule of Civil Procedure 60(b)(6). The court gave Johnston notice of its intent to treat the motion as one made under 28 U.S.C. § 2255 and the possible effect that doing so might have on

subsequent claims. ECF No. 45. As a result, the court allowed Johnston to withdraw or amend the motion. Johnston timely filed the present motion, claiming ineffective assistance by one of his three retained counsel. The government timely responded to the motion, and Johnston replied. The court now addresses the motions.

**DISCUSSION**

Section 2255 provides a person in federal custody a limited opportunity to challenge the constitutionality, legality or jurisdictional basis of a sentence imposed by the court. 28 U.S.C. § 2255; see United States v. Addonizio, 442 U.S. 178, 185 (1979); Embrey v. Hershberger, 131 F.3d 739, 740 (8th Cir. 1997). Such collateral relief is an extraordinary remedy. Bousley v. United States, 523 U.S. 614, 621 (1998). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). "A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record,

5

inherently incredible, or conclusions rather than statements of fact." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003).

I. **Procedural Default**

Collateral proceedings are not a substitute for direct appeal. "The failure to raise an issue on direct appeal acts to bar a petitioner from raising that issue for the first time in a section 2255 motion, and this rule applies equally when the conviction was entered pursuant to a guilty plea." Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997) (citation omitted). The court may excuse failure to appeal only if a defendant can show "(1) a cause that excuses the default, and (2) actual prejudice from the errors that are asserted." Id. (citations omitted).

In the present case, Johnston made no objection to his trial counsel's withdrawal of the objection to the loss amount. Johnston said nothing about the loss amount during his allocution. When the court asked if any other issues remained, Johnston did not raise the issue, and instead thanked the court. The court expressly informed Johnston of his right to appeal, and Johnston confirmed that he understood his obligation to file a notice of appeal within fourteen days. Sent. Tr. 28:4-19. Johnston is well-educated; there were no impediments to his speaking or taking an appeal.

Johnston did not appeal. Johnston makes no allegation that his trial counsel failed to file an appeal on his behalf or in any

6

way acted in an ineffective manner regarding his decision not to appeal. In short, despite several opportunities to raise an objection at his sentencing hearing and the ability to file an appeal, Johnston failed to raise the issue of the loss amount during his sentencing hearing or an appeal. As a result, the claims based on the loss amount are procedurally defaulted unless Johnston can show cause and prejudice to excuse the default.

## II. Ineffective Assistance

Absent unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and prejudice to excuse procedural default. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). To show that he received ineffective assistance, a movant must meet both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984). See United States v. Williams, 562 F.3d 938, 941 (8th Cir. 2009). First, a movant must show that his counsel's performance was so deficient that it was objectively unreasonable. See Strickland, 466 U.S. at 687. Because "[t]here are countless ways to provide effective assistance in any given case" and different attorneys "would not defend a particular client in the same way," the court reviews the performance of defense counsel with significant deference and with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second,

a movant must demonstrate prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.

Johnston argues that Kelly[3] provided ineffective assistance by failing to dispute the loss amount, failing to defend a civil case, failing to challenge charge by information, failing to present evidence to limit restitution and failing to inform Johnston about the entry of an order of restitution. The court addresses each argument in turn.

**A. Loss Amount**

When a defendant objects to facts contained in a presentence investigation report, the court may not rely on those facts unless proven by a preponderance of the evidence in an evidentiary hearing or at trial. However, when a defendant withdraws written objections at sentencing, the defendant waives the objection and the court may rely on those facts. United States v. White, 447 F.3d 1029, 1032 (8th Cir. 2006). In the present case, Kelly withdrew the objection to the loss amount. See Sent. Tr. 4:20-22 ("I did not articulate that well. There is no dispute as to the

---

[3] Johnston retained a team of at least three experienced, highly regarded defense attorneys and appears dissatisfied with the performance of one of those attorneys, Kelly. He claims that Kelly "strong armed his way into the lead counsel position" and that he "held defendant [and his other attorneys] hostage" to prevent him from submitting a sentencing position prepared by Sicoli. But Johnston retained Kelly, Gurstelle and Sicoli, and he was free to terminate or direct their representation as he wished.

8

loss in the presentence report or with what [the AUSA] has just said."). Kelly also indicated that a dispute remained as to the recovery amounts and eventual restitution value. Id. at 4:22-5:1 ("I think that we describe the recovery on the loss further in the -- in our memorandum than was discussed in the presentence report. The presentence report rather left it at an artificially high number, not taking into account the ongoing recoveries."). As a result, the court deferred determination of the final restitution amount pending further efforts by the receiver appointed in the state civil case.

For purposes of calculating the advisory offense level, the court considers the greater of the actual or intended loss. U.S. Sentencing Guidelines Manual § 2B1.1 n.3(A). Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense." Id. Pecuniary harm is reasonably foreseeable when the defendant "knew or under the circumstances, reasonably should have known, [the] potential result of the offense." Id. The court need only make a reasonable estimate of the loss. Id. § 2B1.1 n.3(C).

In the present case, denial is warranted because "ordinary questions of guideline interpretation falling short of the miscarriage of justice standard do not present a proper section 2255 claim." Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011). In the interest of justice, however, the court also addresses the claim under Strickland.

9

Kelly knew about Thorvig's conclusion that Johnston "oversold these 10 separate loans to obtain $78,200,000 in additional funds." Thorvig Aff. ¶ 4, ECF No. 47-3; Johnston Aff. ¶ 11, ECF No. 47, at 4–5. Given the expert's conclusions, the court cannot say that Kelly rendered objectively unreasonable assistance. Even absent the expert's conclusion, a decision to withdraw the objection and instead focus the attention of the court on Johnston's remorse and efforts to remedy his actions falls well within the scope of reasonable assistance.

Further, Johnston cannot show that the outcome of his sentencing would be any different had his attorney objected. Johnston and Thorvig agree that he oversold $78.2 million in loan participations.[4] Def.'s Reply 2, ECF No. 51, at 2; see Thorvig Aff. ¶ 4, ECF No. 43-4, at 9. These oversold loans constitute potential pecuniary harm between $50 and $100 million about which Johnston knew or reasonably should have known. As a result, it is not reasonably probable that the outcome would have been different had Kelly not withdrawn the objection. Therefore, Johnston does not show ineffective assistance of counsel as to the loss amount for sentencing, and denial is warranted.

---

[4] The arguments presented in the Rule 60 motion are repeated in the § 2255 motion.

**B. State Civil Case**

Johnston next claims that Kelly failed to represent him in the civil case proceeding concurrently in state court. Specifically, he claims that Kelly "failed to represent [defendant] in any of the civil matters" and "allowed the Receiver to collect funds that well surpassed the amount of the alleged loss." Def.'s Mem. Supp. 8. The documents submitted by defendant contradict his claim, a reflect a total recovery less than the alleged loss. See, e.g., Johnston Aff. Ex. 1, ECF No. 47-1, at 7 (state court order of November 17, 2011 noting $28.85 million in distributions by receiver with $30 million more expected by December 31, 2011). Moreover, assuming that Kelly's actions in the civil matter allowed the receiver to recover more funds, it is unclear how doing so could have had any prejudicial effect on sentencing or restitution. Therefore, denial is warranted as to this claim.

**C. Charge by Information**

Johnston also claims that his attorneys provided ineffective assistance by failing to challenge the charge by information. This claim is without merit. In accordance with Federal Rule of Criminal Procedure 7(b), the government explained the right to be charged by grand jury, and Johnston stated that he understood his right and that he wished to waive that right. Plea Tr. 3:13–4:12. Johnston then executed a written waiver. See id. 4:13–5:7; ECF No.

10 (written waiver). Therefore, denial of the motion is warranted as to charges by amended information.

**D. Restitution**

As an initial matter, Johnston's challenge to the restitution order is not cognizable. "[A] federal prisoner cannot challenge the restitution portion of his sentence using 28 U.S.C. § 2255, because this statute affords relief only to prisoners claiming a right to be released from custody." United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003); accord Bailey v. Hill, 599 F.3d 976, 978-84 (9th Cir. 2010) (holding that 28 U.S.C. § 2254 does not confer jurisdiction over a petition challenging assistance of counsel related to restitution order and applying reasoning of § 2255 cases). Moreover, this claim is not cognizable under 28 U.S.C. § 2241. Accord Wilson v. Jones, 430 F.3d 1113, 1120 (10th Cir. 2005) ("[A] habeas petition under § 2241 may be granted only if the challenged state action affected the duration of the petitioner's custody." (citations and internal quotation marks omitted). As a result, denial is warranted.

Denial is further warranted because Johnston cannot show that he received ineffective assistance. Three of his retained attorneys received electronic notice of the motion for entry of restitution. Defendant claims that a fourth attorney, "Brett M. Larson, Esq., who is private counsel to [defendant]" did not receive notice of the final restitution amount. Def.'s Mem. Supp.

12

2. However, Larson never entered an appearance in the case. The decision by those attorneys not to object to a proposed restitution amount nearly $26 million less than the amount in the presentence investigation report is objectively reasonable.

Even assuming that Kelly did not inform Johnston about the proposed restitution amount, Johnston cannot show that he was prejudiced. Johnston offers no evidence that a challenge would have further lowered the restitution amount. For example, contrary to the present motion, Johnston expressly agreed that he defrauded Community Financial Bank, First Southern Bankcorp, LNV Corp. and Republic Bank. Plea Agreement ¶ 1(9). Indeed, the state court approved the same $91,193,042[5] amount just weeks later in the civil proceeding, even after denying summary judgment in a related clawback action against Johnston's relatives. See Johnston Aff. Ex. 1, ECF No. 47-1, at 3–4. Therefore, this claim fails, and denial is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. The motions to vacate, set aside or correct sentence [ECF Nos. 43, 46] are denied; and

---

[5] Any losses that the receiver recovers for which the victims receive actual payments of principal will be credited to Johnston against his restitution obligation.

2. Pursuant to 28 U.S.C. § 2253, the court denies a certificate of appealability.

Dated: June 18, 2012

                                                 s/David S. Doty  
                                                 David S. Doty, Judge  
                                                 United States District Court